**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2509**

WAI MAN TOM,

             Plaintiff - Appellant,

and

BRANDON KELLY, on behalf of himself and all others similarly situated,

             Plaintiff,

          v.

HOSPITALITY VENTURES LLC, d/b/a Umstead Hotel and Spa; SAS INSTITUTE, INC.; NC CULINARY VENTURES LLC, d/b/a Ãn Asian Cuisine,

             Defendants – Appellees,

and

ANN B. GOODNIGHT,

             Defendant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:17-cv-00098-FL)

Argued: September 8, 2020                    Decided: November 24, 2020

Before AGEE and QUATTLEBAUM, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

---

Affirmed in part, vacated in part and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Kleeh joined.

---

**ARGUED:** Gilda Adriana Hernandez, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant. John R. Hunt, STOKES WAGNER, ALC, Atlanta, Georgia, for Appellees. **ON BRIEF:** Charlotte Smith, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant. Arch Y. Stokes, Jordan A. Fishman, STOKES WAGNER, ALC, Atlanta, Georgia, for Appellees.

---

QUATTLEBAUM, Circuit Judge:

In this appeal, we are required to apply statutory provisions of the Fair Labor Standards Act ("FLSA") and accompanying regulations to workers in the restaurant industry. Ãn Asian Cuisine ("Ãn"), an upscale sushi restaurant in Cary, North Carolina, paid its servers an hourly rate plus tips and automatic gratuities, which generally consisted of twenty percent of the bill for parties of six or more. When combined, the hourly wage, tips and automatic gratuities almost always exceeded the FLSA's minimum-wage and overtime requirements. The Appellants (the "Employees") claim, however, that the tips and automatic gratuities cannot be considered in determining whether Ãn met its FLSA obligations because they were paid through an unlawful tip pool. Tip pools must only include employees who customarily and regularly receive tips. Ãn, according to the Employees, included in its tip pool employees who did not meet that criteria. Therefore, the Employees claim Ãn violated the FLSA, entitling them to damages, attorneys' fees and costs.[1]

The district court disagreed and entered summary judgment in favor of Ãn. It determined that the automatic gratuities were not tips but instead commissions, which, according to the court, entitled Ãn to invoke a statutory exemption to the FLSA's requirements—29 U.S.C. § 207(i) ("the 7(i) exemption"). The district court held that the

---

[1] The Employees allege that Appellees Hospitality Ventures LLC, d/b/a Umstead Hotel and Spa, SAS Institute, Inc. and NC Culinary Ventures, LLC, d/b/a Ãn Asian Cuisine are their joint employers. Appellees, referred to simply as Ãn here, dispute the Employees' allegations.

3

automatic gratuities satisfied the requirements of the 7(i) exemption for most weeks at issue here and, for those that it did not, the tip pool was valid as a matter of law.

We agree with the district court that the automatic gratuities were not tips. But, for the reasons set forth below, we conclude the district court erred in its application of the 7(i) exemption. Accordingly, we affirm in part, vacate in part and remand the case to the district court for consideration of that exemption consistent with this decision. Further, to the extent that, on remand, Ãn's tip pool remains relevant to its FLSA obligations, we conclude that there are genuine issues of material fact as to whether all of its participants customarily and regularly receive tips and, thus, whether the tip pool was lawful.

I.

We begin with some basics about the FLSA. Congress enacted the FLSA in 1938 in order "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). To that end, "the FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the [FLSA] would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Id.* (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)) (internal quotation marks omitted).

Although it has many provisions, "[t]he FLSA is best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996)).

4

"Thus, the [FLSA] requires payment of a minimum wage and limits the maximum working hours an employee may work without receiving overtime compensation."[2] *Id.* (internal citations omitted). The FLSA currently requires a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Furthermore, "the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)). Overtime compensation must be "at a rate not less than one and one-half times the regular rate at which [a covered employee] is employed"—at least $10.88 per hour. 29 U.S.C. § 207(a)(2)(C). For convenience, we will refer to the minimum-wage and overtime requirements as the "FLSA obligations."

The FLSA obligations are simple enough for employees who receive a traditional hourly wage. In those situations, employers satisfy their FLSA obligations by directly paying their employees hourly wages in excess of the statutory minimum-wage and overtime requirements. But things get more complicated in the restaurant industry. There, certain employees—such as servers—are typically paid lower hourly wages, well below the minimum wage. Yet they also receive compensation through tips or gratuities. The question then becomes how do restaurants satisfy their FLSA obligations? More specifically, can tips and/or gratuities be used to satisfy those obligations and, if so, what

---

[2] Unlike many state and federal employment laws, the applicability of the FLSA does not depend directly on the number of employees at a business. Instead, the FLSA's minimum-wage and overtime requirements generally apply to all employees who are "engaged in commerce or the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1).

FLSA rules govern how this should be done? Unfortunately, the FLSA provides only limited guidance.

Generally, the FLSA characterizes employees' non-hourly compensation in three different categories that may be relevant to restaurant employees—tips, service charges and commissions. The classification of a restaurant employee's pay determines how, and to what extent, that compensation satisfies the FLSA's minimum-wage or overtime requirements. We now discuss each category and how it can be used to satisfy an employer's FLSA obligations.

The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The accompanying regulations further define "tips" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are amounts determined *solely by the customer*, who has the right to determine who shall be the recipient of the gratuity.

29 C.F.R. § 531.52 (emphasis added). In addition, that same regulation provides that tips can satisfy the FLSA's minimum-wage requirement by use of the tip credit in 29 U.S.C. § 203(m)(2)(A). *Id*. The tip credit provision permits an employer to pay tipped employees a reduced cash wage of $2.13 per hour and "take a credit against the minimum wage by using an employees' [sic] tips as wages." *Trejo*, 795 F.3d at 447 (internal quotation marks omitted). Thus, for an employee making $2.13 per hour, the employer can utilize a tip credit of $5.12 per hour to meet its minimum-wage obligations. *See* 29 C.F.R. 531.59(a).

6

This same tip credit can be applied to an employer's overtime obligations. *See* 29 C.F.R. § 531.60. To illustrate how this works, an employee working overtime must be paid $10.88 per hour—one and one-half times $7.25. The employer can still use the $5.12 tip credit but not more, meaning the hourly wage for overtime must be $5.76— $10.88 minus a $5.12 tip credit.

Whether for regular wages or overtime wages, an employer must notify its employees in advance if it intends to rely on the tip credit provision to meet its FLSA obligations and must allow employees to retain "all tips received." 29 U.S.C. § 203(m)(2)(A). As described in more detail below, under certain circumstances, employers are permitted to allow "the pooling of tips among employees who customarily and regularly receive tips." *Id.*

Service charges are not defined in the FLSA. But under FLSA regulations, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip . . . ." 29 C.F.R. § 531.55(a). Instead, it is a service charge. *Id.* Further, service charges "may be used in their entirety to satisfy the monetary requirements of the [FLSA]" if they "are distributed by the employer to its employees." *Id*. § 531.55(b). So, compensation that qualifies as service charges can satisfy the FLSA minimum-wage and overtime obligations.

Finally, the third category of compensation is commissions on goods or services. For commissions, the FLSA instructs that:

> No employer shall be deemed to have violated [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate

7

of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [29 U.S.C. § 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i). As the corresponding regulation explains, the 7(i) exemption "was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions." 29 C.F.R. § 779.414. Thus, if compensation qualifies as a commission under this provision, an employer is exempt from the FLSA's overtime requirements, but not its minimum-wage requirements.

Regrettably, neither the FLSA nor its regulations define a "commission."[3] Our best guidance is found in 29 C.F.R. § 779.414, which, in discussing the types of employees paid by commission, provides:

These employees are generally employed in so-called "big ticket" departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders.

---

[3] *Black's Law Dictionary* defines a commission as "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction." *Commission*, BLACK'S LAW DICTIONARY (11th ed. 2019).

8

*Id.* This is a non-exhaustive list, as "[t]here may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption." *Id.*

While perhaps benign on the surface, these FLSA provisions are difficult to apply largely due to the potential overlap of the categories. Making matters worse is the lack of guidance as to how these provisions interact. Reflecting that difficulty, the parties present competing views on how to characterize Ãn's automatic gratuities. The Employees contend they are tips, which, they argue, cannot be used to satisfy Ãn's FLSA obligations because Ãn required the Employees to pool their tips with other staff members who did not "customarily and regularly receive tips." *See* 29 U.S.C. § 203(m)(2)(A). Ãn, on the other hand, argues the automatic gratuities are commissions, which can be used to satisfy its FLSA obligations pursuant to the 7(i) exemption. To resolve this issue, we must delve into a morass of FLSA statutory and regulatory provisions. Doing so makes us sympathize with both employers and employees who must try to understand them. And it certainly amplifies the difficulties that district courts often face when resolving FLSA collective actions. Before turning to the difficult legal issues presented in this case, however, we turn first to the facts.

II.

Ãn was an upscale, fine-dining sushi[4] restaurant in Cary, North Carolina until it closed its doors on January 28, 2017. Ãn was unusual in that it did a majority of its business during the week. In fact, Ãn was closed on the weekends, except for the dinner shift on Saturday. A substantial portion of Ãn's income came from large dinner parties of six guests or more, sometimes including groups with as many as seventy people. Frequently, these large groups occupied Ãn's private dining rooms, leaving the main dining room empty.

Ãn employed a variety of staff members, including Servers, Server Assistants, General Manager, Assistant Restaurant Manager, Beverage Manager, Closing Kitchen Supervisor, Sushi Chef, Sushi Chef Helpers, Chefs, Bartenders and Hosts/Hostesses. By and large, Ãn characterized these employees as either "front-of-the-house" or "back-of-the-house" staff. Plaintiffs Wai Man Tom and Brandon Kelly held the role of "Captains," as they were the Servers with the most experience.

While working at Ãn, Servers and Server Assistants received compensation from four sources: (1) an hourly wage of at least $2.13 for the first forty hours of the week and at least $5.76 for all additional hours; (2) cash tips; (3) credit card tips and (4) automatic gratuities. The parties dispute the nature and legal effect of automatic gratuities. However,

---

[4] While many may think of sushi as a modern delicacy in the United States, it was, according to the *Michelin Guide*, actually "trendy in the very early 1900s." Despite its early popularity, strained relations with Japan during the early twentieth century caused the sushi industry to lay somewhat dormant. Following the growth in international trade and relaxation of immigration laws in the Post-World War II era, however, the sushi industry spread rapidly across the country. Brandt T. Bowman, *Roll Sushi, Roll: Defining "Sushi Grade" for the Consumer and the Sushi Bar*, 116 Penn. St. L. Rev. 495, 504 (2011).

Ãn generally applied an automatic gratuity of twenty percent to the bill of parties of six or more people.

In July 2014, Ãn implemented a tip pool for its evening shifts, pooling together all tips and automatic gratuities that were then "tipped out" to employees based on their job descriptions:

- Captain: 2%
- Server: 54%
- Bartender: 4%
- Sushi Chef: 4%
- Server Assistant/Runner/Expediter: 36%

Apart from the tip pool, the Hostess received 100% of all tips received from to-go orders. The tip pool policy was outlined in the employee handbook, and Ãn required employees to sign off on the policy. Under this system, many of the Servers were paid very well. For example, in 2015, Kelly, one of the Servers seeking relief here, made more than $81,000. In fact, some of the Servers made more than Ãn's Managers.

On February 21, 2017, Kelly sued Ãn under the FLSA and North Carolina Wage and Hour Act ("NCWHA"). Specifically, Kelly brought a putative collective action under the FLSA, alleging that Ãn violated the FLSA's minimum-wage and overtime requirements by operating a tip pool that unlawfully included employees who did not customarily and regularly receive tips and were, thus, ineligible. Kelly, on behalf of himself and all others similarly situated, also alleged violations of the NCWHA. Finally, Kelly, on behalf of himself and Tom, claimed that Ãn engaged in unlawful retaliation in violation of the FLSA. After the Complaint was filed, seven Opt-In Plaintiffs—including Tom—filed Consents to Sue As Party Plaintiffs.

11

The Employees later filed a First Amended Complaint, substituting Tom as the Named Plaintiff. After Ãn filed an Answer, the district court entered an Order bifurcating discovery into two phases. The Order restricted Phase I discovery to issues of conditional certification of the Employees' class and collective action. However, because Ãn advanced the argument that the 7(i) exemption barred the Employees' claims, the district court also permitted discovery on that issue.

After the first phase of discovery, the Employees moved to conditionally certify the case as an FLSA collective action and a Federal Rule of Civil Procedure 23 class action. Ãn moved for summary judgment contending that the automatic gratuities were commissions under the 7(i) exemption, which satisfied its FLSA obligations for each of the Employees' workweeks. Alternatively, assuming the 7(i) exemption did not apply, Ãn contended that it was entitled to a tip credit under 29 U.S.C. § 203(m)(2)(A).

The district court granted summary judgment for Ãn on the Employees' FLSA claims relying on two FLSA provisions. First, the district court held that Ãn satisfied its FLSA obligations in most weeks under the 7(i) exemption for "commissions on goods and services." Second, the district court found that Ãn satisfied its FLSA obligations in the remaining weeks by operating a valid tip pool under 29 U.S.C. § 203(m)(2)(A). The court also entered judgment for Ãn on the FLSA retaliation claims, dismissed the Employees' NCWHA claims without prejudice and denied the Employees' Motion for Conditional Certification as moot.

The Employees timely appealed. "We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and

12

viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)).

III.

Turning to the merits of the arguments presented on appeal, we first address the application of the 7(i) exemption. Then we consider the validity of the tip pool before finally considering the retaliation claim.

A.

The Employees first argue that the district court erred in concluding that Ãn satisfied its FLSA obligations by way of the 7(i) exemption. That argument has several sub-issues. First, the Employees argue that the automatic gratuities must be tips because Ãn notified the Employees that a tip pool would be used. Second, the Employees contend that there are genuine issues of material fact as to whether the automatic gratuities are tips. Finally, the Employees argue that, on this record, the requirements of the 7(i) exemption have not been met. We will consider these arguments in turn.

1.

Initially, the Employees insist that the automatic gratuities cannot be considered anything but tips because Ãn informed Employees that tips would be used as a credit

13

against Ãn's FLSA obligations.[5] It is true the FLSA requires such a notification if an employer uses the tip credit to satisfy its FLSA obligations, *see* 29 U.S.C. § 203(m)(2)(A), and that Ãn provided such notice. Nonetheless, that does not negate Ãn's ability to rely on other avenues to satisfy its FLSA obligations. The FLSA does not impose a proverbial "fork in the road" requiring an employer to pick one method of compliance and "stay in that lane" for perpetuity. To the contrary, we find nothing in the statutes or regulations that precludes Ãn from pursuing all available avenues of FLSA compliance. Thus, we reject the Employees' attempt to limit the ways for Ãn to meet its FLSA obligations.

2.

Alternatively, the Employees argue that there are genuine issues of material fact as to whether the automatic gratuities are tips or commissions. Specifically, the Employees contend that customers and Servers, on occasion, asked management to remove the automatic gratuity from the bill. Therefore, they argue that the automatic gratuity was sufficiently flexible and negotiable to qualify as a tip.

In response, Ãn argues that the automatic gratuities could not be tips, as the customers did not determine the application and amount of the automatic gratuity. Rather, Ãn argues the record establishes that its Managers had the final say about whether to waive the automatic gratuity. Because the automatic gratuities were nondiscretionary—at least

---

[5] As noted above, an employer is entitled to a credit against its FLSA obligations for compensation that qualifies as tips. 29 U.S.C. § 203(m)(2)(A). The tips can be paid either directly to the employee or indirectly through distributions from a tip pool. *Id.* But if an employer uses a tip pool, it must only include "employees who customarily and regularly receive tips." *Id.*

14

on the customers' part—Ãn argues that the district court properly characterized the automatic gratuities as commissions.

The district court agreed with Ãn, finding that the automatic gratuities imposed by Ãn and distributed to the Employees qualified as commissions that could be used to satisfy Ãn's FLSA obligations. In so holding, the district court found that Ãn's management had the sole discretion to remove an automatic gratuity from a customer's bill.

After reviewing the record, we find no error in the district court's determination that the automatic gratuities were not tips. In granting summary judgment on this issue, it properly applied Rule 56, which states "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* When determining whether a genuine issue of material fact has been raised, the court must construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. *Ballengee*, 968 F.3d at 349.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the nonmoving party must

15

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *See Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

With those principles in mind, we turn to Ãn's motion. The Employees do raise a factual dispute about whether Ãn charged every qualifying group of six or more customers an automatic gratuity. However, not all factual disputes defeat a motion for summary judgment. To do so, a factual dispute must be material. *Id.* Recall that a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Id*. To consider the applicable law, we refer again to the regulatory requirements for a tip. A sum of money "presented by a customer as a gift or gratuity in recognition of some service performed" is only a tip when both the decision to pay the gratuity and the amount of the gratuity are "determined solely by the customer." 29 C.F.R. § 531.52. Therefore, under this regulation, the material issue is not whether customers always paid a twenty-percent automatic gratuity. The material issue is *who* determined whether and how much to pay.

16

As it is undisputed that the customers did not have unfettered discretion to leave (or not leave) the twenty-percent gratuity, the Employees have not raised a question of fact that would enable a reasonable jury to determine that the automatic gratuities were tips. The decision to remove or modify the automatic gratuity—even construing the evidence in the light most favorable to the Employees—was Ãn's. Consequently, even if the Employees could prove that Ãn would occasionally waive the automatic gratuities, that fact would not be material as it still would not enable a reasonable jury to find the twenty-percent automatic gratuity was a tip.

Our decision should not be construed to mean that any time a fixed-rate gratuity is placed on a restaurant bill, it is not a tip. The Employees point to several district court decisions where there was a genuine issue of material fact concerning the proper classification of automatic gratuities. *See, e.g.*, *Alban v. 2k Clevelander LLC*, No. 17-CV-23923, 2018 WL 4859068, at *5 (S.D. Fla. Aug. 28, 2018) (finding a genuine issue of material fact as to whether a fixed-rate gratuity was discretionary); *Shehata v. Sobe Miami, LLC*, No. 17-cv-23175, 2018 WL 2995603, at *3 (S.D. Fla. June 14, 2018) (finding a genuine issue of material fact when plaintiffs offered evidence that a twenty-percent gratuity was suggested rather than mandatory). But those cases involved disputes as to whether the discretion concerning the charge rested with the customer or the restaurant. For example, if a bill listed a twenty-percent charge for a party of six or more, but indicated the charge was "suggested," our decision might be different. But the record here is clear. The twenty-percent gratuity was automatically applied absent Ãn's decision to waive it. Therefore, we agree with the district court that the automatic gratuities are not tips under

17

the FLSA. This finding, however, does not end the inquiry, as we still must determine whether the district court properly applied the 7(i) exemption.

3.

Finally—assuming the automatic gratuities were not tips—the Employees argue the district court erred in its application of the 7(i) exemption. They first argue that the district court incorrectly held that the 7(i) exemption satisfied both Ãn's minimum-wage and overtime obligations. We agree. The 7(i) exemption applies only to overtime obligations. *See* 29 U.S.C. § 207(i) ("No employer shall be deemed to have violated [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment *for a workweek in excess of the applicable workweek specified therein*, if [] the regular rate of pay of such employee is in excess of *one and one-half times the minimum hourly rate* applicable to him under [29 U.S.C. § 206] . . . ." (emphasis added)). In other words, if the 7(i) exemption applies, an employer does not have to pay FLSA overtime wages for the applicable workweek. It says nothing about the FLSA's non-overtime minimum-wage requirements, which apply regardless of whether overtime is also due.

Second, the Employees argue that the automatic gratuities fail to satisfy the requirements of the 7(i) exemption. To qualify as commissions, the 7(i) exemption requires that "more than half [of the employee's] compensation . . . represents commissions on goods or services."[6] 29 U.S.C. § 207(i). The Employees argue that it was necessary to

---

[6] For purposes of this appeal, the Employees concede that the other statutory requirements of the 7(i) exemption are met – i.e., that Ãn operated a qualifying retail or service establishment and the Employees' regular rates of pay exceeded one and one-half times the applicable minimum wage.

18

include both tips and automatic gratuities in determining whether the automatic gratuities exceeded fifty percent of the Employees' total compensation. They also argue that, in all relevant years, their regular wages, overtime wages and tips regularly exceeded the automatic gratuities. Therefore, the Employees contend that Ãn has not satisfied the requirements of the 7(i) exemption.

The district court rejected this argument. It held, as a matter of law, that tips need not be included if they were not used to satisfy Ãn's FLSA obligations. Specifically, the court relied on a regulation which provided that "[a]ny tips received by the employee in excess of the tip credit need not be included in the regular rate." 29 C.F.R § 531.60.

We find the Employees' arguments on this point persuasive. The regulation relied on by Ãn—29 C.F.R § 531.60—details how to calculate the "regular rate of pay" for a tipped employee who works overtime. *See* 29 C.F.R § 531.60. The district court imported that regulation's "regular rate of pay" language into its analysis of "compensation" under the 7(i) exemption. "Compensation" and "regular rate of pay," however, are distinct issues. This is made clear by the plain language of the 7(i) exemption, which uses both terms in different contexts. *See* 29 U.S.C. § 207(i) (requiring an employer to prove that "the regular rate of pay of [an] employee is in excess of one and one-half times the minimum hourly rate" *and* "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services").

Moreover, the governing regulation provides guidance on computing an employee's compensation for the representative period under the 7(i) exemption. *See* 29 C.F.R. § 779.415. Specifically, the regulation instructs:

> In determining for purposes of section 7(i) whether more than half of an employee's compensation represents commissions on goods or services it is necessary first to total *all compensation* paid to or on behalf of the employee as remuneration for his employment during the period. All such compensation *in whatever form or by whatever method paid* should be included . . . .

*Id.* § 779.415(a) (emphasis added) (internal quotation marks omitted). This language is straightforward. "[A]ll compensation" means what it says. *Id.* It does not exclude tips or any other form of compensation. Further, the broad language—"in whatever form or by whatever method paid"—plainly indicates that tips are not to be excluded. *Id.* Therefore, we conclude that the district court erred in declining to include tips when determining whether the automatic gratuities constituted more than half of the Employees' compensation for a representative period.

Accordingly, we remand the case to the district court to consider whether the automatic gratuities qualify as commissions under the 7(i) exemption as we have explained and, if so, to what extent they satisfy Ãn's overtime obligations. In so doing, we do not intend to limit any other ways in which Ãn can satisfy its FLSA obligations. Ãn may rely on other avenues of FLSA compliance other than the 7(i) exemption as this case proceeds on remand. For example, it may contend that the automatic gratuities are "service charges."[7] As mentioned above, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment" is a service

---

[7] The district court and the parties appear to have considered service charges to be interchangeable with commissions. But, at least on the face of the statutory and regulatory provisions, we find nothing that supports such treatment.

charge. 29 C.F.R. § 531.55(a). And service charges "may be used in their entirety to satisfy the monetary requirement of the [FLSA]" if they "are distributed by the employer to its employee." *Id.* § 531.55(b). Therefore, the "service charges" category of compensation may form an independent basis for satisfying Ãn's FLSA obligations.[8]

With that, we turn to the propriety of the tip pool.

### B.

The Employees next contend that the district court erred in finding that Ãn satisfied its FLSA obligations in the workweeks not covered by the 7(i) exemption by operating a valid tip pool under 29 U.S.C. § 203(m)(2)(A). Given our remand on the 7(i) exemption and the early procedural posture of this case, it remains to be seen whether Ãn will need to invoke the tip credit to satisfy any of its FLSA obligations. It may very well be the case that Ãn can satisfy its minimum-wage and overtime obligations by relying on the service charge regulation or another exemption to the FLSA. However, because Ãn may need to rely on the tip pool to meet its obligations, we turn to the merits of the Employees' arguments.

As noted above, the FLSA allows an employer to pay a tipped employee a reduced hourly wage and utilize a tip credit to meet its FLSA obligations. *See Trejo*, 795 F.3d at 447. If an employer seeks to use tips to meet its FLSA requirements, it must inform its

---

[8] Of course, whether service charges are in fact a separate avenue for satisfying Ãn's FLSA obligations is not before us. Likewise, we express no opinion on the merit of any additional defenses Ãn may offer in response to the Employees' claims. Therefore, our directions on remand should not be construed as an opinion on the outcome of the district court's consideration of this issue.

21

employees of its use of the tip credit, and the employees must be permitted to retain the tips. 29 U.S.C. § 203(m)(2)(A). The employer may only pool, however, the "tips among employees who customarily and regularly receive tips." *Id.* While our Court has not addressed the question of when an employee is deemed to receive tips customarily and regularly, those that have analyze the employee's job duties rather than the employee's job description. *See, e.g.*, *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 191 (5th Cir. 2015) ("Labels are easily molded to fit a party's goals and cannot be determinative of whether an employee customarily and regularly receives tips."). In this inquiry, our sister circuits have looked to whether the employee "ha[s] 'more than de minimis interaction with the customers' in an industry in which 'undesignated tips are common.'" *Montano*, 800 F.3d at 192 (quoting *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998)). We find that test persuasive and apply it here.

The Employees argue that the Kitchen Closing Supervisor (Nicholas Papas) and the Sushi Chef Helpers did not customarily and regularly receive tips. Therefore, according to the Employees, Ãn's inclusion of these employees in the tip pool renders it invalid. The district court rejected the Employees' arguments and found Papas and the Sushi Chef Helpers were proper participants in Ãn's tip pool. On appeal, the Employees contend that the district court improperly weighed the evidence and did not recognize genuine and material factual disputes about the validity of the tip pool.

1.

First, the district court held that Papas—the Kitchen Closing Supervisor who also sometimes served as an Expediter—was a valid tip pool participant because he "had more

22

than de minimis interaction with the customers of [Ãn]." J.A. 3534. In large part, the district court relied on Papas's characterization of his job duties and frequent interaction with customers. While the district court acknowledged that the Employees produced conflicting testimony that indicated Papas had little, if any, interaction with customers and was almost exclusively a back-of-the-house employee, it held that the Employees' observations "only provide[d] a first-person view point of time periods in which such servers were working and watching the activities of Papas, whereas Papas's statements reflect his complete first-hand account of his activities . . . ." J.A. 3536. The Employees contend that the district court improperly weighed the evidence in granting summary judgment for Ãn. We agree.

The record contains evidence that indicates Papas frequently served guests at the sushi bar, interacted with customers in the dining room and ran food to tables as an Expediter. Conversely, the Employees produced testimony that Papas primarily worked in the kitchen, rarely interacted with customers and had only de minimis interactions with customers. This presents a quintessential factual dispute that is both genuine and material to the Employees' claims about the validity of the tip pool. Thus, we must conclude that the district court erred in discounting the conflicting evidence about Papas's duties.

2.

Second, the district court held that the Sushi Chef Helpers "also meet the criteria of valid tip pool participants." J.A. 3536. In support of this finding, the district court noted that the Sushi Chef Helpers frequently interacted with customers and often took orders from guests. The district court recognized conflicting evidence offered by the Employees but, as with Papas, held that the Employees' observations "only provide[d] a first-person

23

view point of time periods in which [the Employees] were working and watching the activities of sushi chef helpers, whereas statements by the sushi chefs and sushi chef helpers . . . reflect[ed] their complete first-hand account of their activities." J.A. 3538. Here, again, the Employees contend that the district court improperly weighed the evidence and discounted the Employees' evidence. We agree that this aspect of the district court's decision appears to constitute weighing the evidence in a way that is improper at the summary judgment stage of the case. After all, we must consider the evidence in the light most favorable to the Employees as the nonmoving parties.

But that is not the end of our inquiry. We must still examine whether the Employees presented evidence that creates a genuine issue of material fact as to whether the Sushi Chef Helpers had more than de minimis interaction with the customers. To be sure, Tom and Opt-In Plaintiff Deion Dorsey testified that Sushi Chef Helpers rarely interacted with guests. Aside from this conclusory testimony, however, the Employees offered no other evidence in support of their argument. On the other hand, Ãn produced specific, compelling evidence from multiple sources, including some of the Employees and the witnesses they offered, that the Sushi Chef Helpers spent most of their time in the front of the house and frequently interacted with and served customers.

Applying the standard for summary judgment described above, Ãn made a threshold showing that there is no genuine issue of material fact. Accordingly, the Employees were required to demonstrate specific, material facts exist that give rise to a genuine issue. *Celotex*, 477 U.S. at 323–24. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary

24

judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *See Strickler*, 989 F.2d at 1383. The limited testimony offered by the Employees are conclusory allegations. Without more, even construing all reasonable inferences and ambiguities against Ãn and in favor of the Employees, we cannot say the district court erred in granting summary judgment.

Despite our conclusion about the Sushi Chef Helpers, assuming the automatic gratuities—either as service charges or by another method—do not satisfy Ãn's FLSA obligations, our decision about Papas is enough to create a genuine issue of material fact about the validity of the tip pool. *See Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1082 (9th Cir. 2016) (noting that a tip pool is only valid "if it is comprised exclusively of employees who are 'customarily and regularly' tipped" (quoting 29 U.S.C. § 203(m)(2)(A))); *Montano*, 800 F.3d. at 189 ("Therefore, the narrow issue is whether the coffeeman was an employee who 'customarily and regularly receive[d] tips.' 29 U.S.C. § 203(m). If the answer is yes, [the restaurant] prevails. If the answer is no, [the restaurant] violated the FLSA by failing to pay Appellants $7.25 per hour." (footnote omitted)). However, any further consideration of the validity of the tip pool shall be based on evidence related to Papas and not the Sushi Chef Helpers.

C.

Last, we turn to Tom's retaliation claim.[9] This Court has held:

> A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action.

*Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (citation omitted). Courts generally look to the Title VII framework when analyzing the "adverse action" element of a FLSA retaliation case. *Id.* at 341–43. Therefore, "a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee' because the 'employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 343 (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

The district court held that Tom's retaliation claims fail as a matter of law because he has not shown that he suffered an adverse employment action after complaining to management about wage and hour policies. The parties agree that Tom complained to Ãn's General Manager in September 2016. However, Tom testified that his income generally stayed the same or increased and that he did not notice a reduction in his hours.

---

[9] It is not clear from the proceedings below whether Kelly pled an individual cause of action for retaliation. Although it appears the district court addressed such a claim, Kelly did not file a Notice of Appeal from the district court's judgment. In any event, we would find no error in the district court's well-reasoned analysis.

Tom raises two arguments on appeal. First, he argues that summary judgment on his retaliation claim was premature given the bifurcated discovery. Second, he contends that the evidence in the record is sufficient to create a genuine issue of material fact as to the necessary elements of an FLSA retaliation claim. Despite his argument that summary judgment is premature, Tom has not articulated *what* discovery remains that would aid him in proving his retaliation claim. Moreover, Tom's testimony serves as a tacit admission that he did not suffer any adverse action as a result of his complaint to Ãn's management. Even viewing the evidence in the light most favorable to Tom, we agree with the district court that Tom has not articulated a genuine issue of material fact as to whether he suffered an adverse employment action. *See Anderson*, 477 U.S. at 248 (noting that a dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Accordingly, we affirm the district court's judgment as to Tom's retaliation claim.

IV.

For the reasons stated above, the district court's order granting Ãn's Motion for Summary Judgment is

*AFFIRMED IN PART, VACATED IN PART AND REMANDED.*