[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12422

_____

MELISSA COMPERE,

VALDO SULAJ,

ALVARO BETANCOURTE,

ALBA CASTILLA,

SLAGJANA KOVACHEVSKA,

ALDALYNNE ALDANA,

DANIEL PACHECO,

SANTOS RIVERA,

WILLIAM CAMERON,

ADAM JAGODA,

ALEJANDRA LAVALLE,

ANTONIO SCIANCALEPORE,

MERVE BUDOK,

ARBER LUKOVIC,

VIOLETA MARKOVIC,

2                    Opinion of the Court                    20-12422

TAMAS CZOMBOS,
PABLO CANO,
LUIS LUCIANO,
GORDON MACK,
RONALDO ESCALONA,
ODALYS BURGOS,
MUNEVVER KOC,
MEHMET BAYKARA,

                                                    Plaintiffs-Appellants,

DIEGO VARGAS,

                                                    Plaintiff,

*versus*

NUSRET MIAMI, LLC,
d.b.a. Nusr-et Steakhouse, a Florida limited
liability company,
NUSRET GOKCE,
an individual,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-20277-AHS

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

BRANCH, Circuit Judge:

Restaurants regularly add mandatory service charges or gratuities to customers' bills. This appeal is about whether such charges are "tips" under federal employment law, an issue of first impression in the Eleventh Circuit. If the mandatory service charges are tips, federal law would generally prohibit restaurants from using the fees to pay minimum and overtime wages to employees. But if the charges are not tips, establishments may apply them toward employee wages.

Nusret Miami, LLC is an upscale steakhouse in Miami, Florida. It is owned by Nusret Gokce, a chef and internet celebrity also known by the nickname "Salt Bae."[1] Since opening in November 2017, the restaurant added a mandatory 18% "service charge" to customers' bills. It collected these payments and redistributed them to certain employees on a pro rata basis to cover Nusret's minimum and overtime wage obligations. To do so, the restaurant used a provision in the Fair Labor Standards Act ("FLSA") exempting certain retail and service establishment employers from paying overtime wages if, as relevant here, "the

---

[1] For clarity's sake, we will refer to Nusret Gokce and Nusret Miami—the two defendants—collectively as "Nusret."

regular rate of pay" of employees exceeds one and one-half times the applicable minimum hourly rate. *See* 29 U.S.C. § 207(i).

In this collective action under the FLSA, the plaintiffs—a group of tipped employees at Nusret ("Employees")—challenge Nusret's compensation scheme. The Employees allege that from November 1, 2017, through January 18, 2019, the restaurant paid them less than the required federal minimum and overtime wages and forced them to participate in an illegal tip pool with non-tipped employees. The heart of their argument is that, although their portion of the service charges exceeded the statutory wage requirements (*e.g.*, some employees made over $100,000 per year), Nusret still violated the FLSA because the 18% "service charge" was not a service charge, but, in fact, a tip. And because tips are not part of the Employees' "regular rate of pay," the restaurant could not use them to offset its wage obligations under the FLSA. *See, e.g.*, *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (explaining that "[t]he regular rate by its very nature must reflect all payments which the [Employer and Employees] have agreed shall be received regularly during the work week"); 29 U.S.C. § 207(e). The district court rejected the Employees' argument and granted summary judgment to Nusret. The Employees timely appealed.

The primary issue before us is whether Nusret's mandatory 18% "service charge" is a tip under the FLSA and associated regulations. The Employees say that the charge is a tip; Nusret says it is a bona fide service charge. The classification of this charge is

dispositive of this appeal.  To wit: If the charge *is* a tip, the FLSA barred Nusret from using that money to satisfy its minimum and overtime wage obligations to the Employees.  But if the charge is *not* a tip, Nusret could use it to meet its wage obligations under the FLSA, and the district court properly granted summary judgment.

After careful review and with the benefit of oral argument, we agree with the district court that the service charge was not a tip and could lawfully be used to offset Nusret's wage obligations under the FLSA.[2]  Accordingly, we affirm.

## I.    Background

### A.  Factual Background

Nusret's menu informs customers of the service charge: "For your convenience an 18% service charge will be added to your final bill and will be distributed to the entire team."[3]  Separate from

---

[2] The Employees also appeal the denial of their motions to extend the pretrial and trial deadlines and the deadline for responding to Nusret's motion for summary judgment, as well as a motion for deferred consideration of summary judgment—all for the purpose of conducting the in-person deposition of Nish Patel of Paperchase Accounting, Nusret's outside accountant, which was delayed because of the COVID-19 pandemic.  The Employees hoped Patel's testimony would reveal that Nusret did not report the service charges in its tax returns.  As explained further below, we need not reach these issues given our holding that Nusret's service charge was not a tip no matter how it was treated for tax accounting purposes.

[3] At first, Nusret referred to the charge as an "automatic gratuity" and not a "service charge."  At some point between November 2017 and April 2018, the restaurant began calling it a "service charge."  Yet in every relevant legal

the service charge, customers can add a voluntary, discretionary gratuity by writing in the desired amount on a blank line on the final receipt or by leaving cash tips. The service charge, however, is non-negotiable. Although restaurant managers have the discretion to remove it from the bill when a customer complains about the service or food, the record contains no evidence that the customer has the discretion to negotiate or remove the charge.

The service charge payments never went directly to restaurant employees. Instead, Nusret would process the bill and the service charge (and credit card tips) through a point-of-sale system ("POS System"). Nusret would then distribute the collected service charges—minus 2.65% for credit card processing fees—to employees using a point system to give each employee a pro-rata share of the total.[4] Nusret would also distribute the additional gratuities to tip-eligible employees.

Nusret's pay structure for the Employees changed slightly over the relevant period: From November 2017 through April

---

respect, the service charge remained the same throughout the period at issue in this appeal. And the Employees advance no argument turning on this change in nomenclature.

[4] The Employees dispute Nusret's claim that the service charges were distributed to service employees only (*i.e.*, non-managerial, tipped employees), pointing to the lead plaintiff's deposition testimony that the money was distributed to some employees who performed non-tipped work. This dispute is immaterial, because, as explained below, the service charges were not tips, so it is irrelevant whether Nusret paid some of that money to non-tipped employees.

2018, the restaurant paid the Employees an hourly rate and overtime wage and a pro rata share of the collected service charges. Starting on April 30, 2018, however, the restaurant eliminated the hourly rate for the Employees and instead satisfied its wage obligations exclusively through the service charges.

Nusret explained to its employees that the new pay structure was lawful under 29 U.S.C. § 207(i), which exempts certain employers from paying overtime wages if: (1) "the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate"; and (2) if "more than half [the employee's] compensation for a representative period (not less than one month) represents commissions on goods or services."  29 U.S.C. 207(i).

In 2017, Florida's minimum wage was $8.10 per hour; in 2018, it was $8.25 per hour; and in 2019, it was $8.46 per hour. From November 1, 2017 through January 1, 2019—the period at issue in this lawsuit—Nusret paid the Employees amounts ranging from $23.68 to $51.58 per hour.

### B.  Procedural History

On January 18, 2019, Melissa Compere, a former Nusret server, initiated a collective action complaint[5] on behalf of herself and similarly situated service employees against Nusret Miami and

---

[5] Like class actions, a collective action under the FLSA permits the aggregation of claims by multiple plaintiffs against a defendant, but unlike the prerequisites for class certification in Fed. R. Civ. P. 23, the FLSA requires only that the employees be "similarly situated."  See 29 U.S.C. § 216(b).

Gokce for "unpaid minimum wage compensation, unpaid overtime wage compensation, liquidated damages, return of tips wrongfully taken, and other relief under the Fair Labor Standards Act of 1938." *See* 29 U.S.C. § 216(b) (providing for a collective action of "similarly situated" employees against employers who violate the provisions of the FLSA). The district court granted her motion for conditional certification and certified a collective action of former and current Nusret service employees who worked at the restaurant from November 2017 to January 1, 2019.

The Employees alleged that, "[t]hroughout the majority of [lead plaintiff Compere's] employment as a tipped employee at Nusret Steakhouse," she "and others similarly situated . . . were only paid a share of the tips collected," and therefore were paid no wages at all, in violation of the FLSA's minimum and overtime wage requirements. They also alleged that "non-tipped employees" and "management" improperly participated in the tip pool, which also violates the FLSA. *See* 29 U.S.C. § 203(t) (defining "tipped employee" as any employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips"); *id.* § 203(m)(2)(B) (providing that employers "may not . . . allow[] managers or supervisors to keep any portion of employees' tips").

Nusret filed an answer stating that the Employees "have been fully compensated for all hours worked in accordance with the applicable provisions of the FLSA."

### (i) *Discovery*

During discovery, Employees sought to depose Nish Patel, the corporate representative of Nusret's accounting firm, Paperchase, on the restaurant's treatment of the service charge for financial and tax purposes. Patel's deposition was set for March 20, 2020, in Miami, Florida. But on March 17, 2020, the Employees moved to extend the deadline to file pretrial motions, claiming that, "[t]oday, Defendant's counsel advised that Mr. Patel would not be able to come to Miami, Florida, for his scheduled deposition on March 20, 2020, because he has self-quarantined" at home in New York City and that Compere herself was also quarantined due to the COVID-19 pandemic. Although the filing never explicitly demanded an in-person deposition of Patel, the Employees insisted that they could not take Patel's deposition—which they described as "critically important"—without him traveling to Miami. The district court granted the motion and extended the pretrial motions deadline to April 20, 2020. And then on April 16, 2020, the parties jointly moved to further extend the deadline another sixty days, in part because the Employees had yet to depose Patel due to COVID-related restrictions.

While the joint motion to extend the relevant deadlines was pending, Nusret moved for summary judgment on April 20, 2020. Shortly before the May 4 deadline for responding, the Employees filed for a 30-day extension. And then on Monday, May 4, the Employees responded to Nusret's motion for summary judgment along with a motion to defer consideration of summary judgment

because they had been unable to depose Patel due to the pandemic, *see* Fed. R. Civ. P. 56(d) and (e). The district court denied the Employees' motions for an extension and for deferred consideration of summary judgment.

(ii) *Summary Judgment*

In its motion for summary judgment, Nusret contended that the 18% fee was a bona fide service charge and that the undisputed record evidence showed that the Employees were compensated well above the statutory wage rates. Nusret argued that the critical feature of a tip, unlike a service charge, is that the decision to pay a tip (and how much to pay) is entirely within the customer's discretion. Service charges, in contrast, are mandatory. Because Nusret did not allow customers to refuse to pay the service charge, it was not a tip.

The Employees responded that, for the 18% fee to be a bona fide service charge (and not a tip), Nusret was required to report the payments in its gross receipts on its tax returns. According to the Employees, there is a genuine issue of fact as to whether Nusret reported the service charges in this way, and summary judgment was therefore inappropriate. The Employees also suggested that the charge was not mandatory because managers had discretion to remove it from the bills of dissatisfied customers.

Soon after, the district court granted Nusret's motion for summary judgment, concluding that the restaurant satisfied the 29 U.S.C. § 207(i) exemption because: (1) it was a retail or service

establishment; (2) it was undisputed that at all relevant times Compere's "regular rate of pay" was more than one and one-half times the minimum wage; and (3) more than half of the Employees' compensation for the relevant time consisted of commissions on goods or services. The district court called the Employees' argument that the service charge was actually a tip "erroneous as a matter of law and untenable as a matter of fact." Citing the definition of a tip set forth in 29 C.F.R. § 531.52,[6] the district court noted that Nusret's service charge was not paid directly to the Employees, nor did customers have a right to direct who would receive the service charge. The district court also noted that at least one court had observed that "the essential element of a tip is its voluntary nature," and that Nusret's customers had no choice but to pay the service charge. Accordingly, the court held that because the service charge was not

---

[6] This regulation defines a "tip" as:

> [A] sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer. . . . Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the [FLSA] and in applying the provisions of section 3(m)(2)(A) which govern wage credits for tips.

29 C.F.R. § 531.52.

a tip, it was properly considered part of the Employees' "regular rate of pay" so Nusret could lawfully use it to pay employee wages.[7]  Summary judgment was therefore appropriate, the court said, because Nusret's compensation scheme complied with the FLSA.  This appeal followed.

★    ★    ★

On appeal, the Employees challenge the district court's grant of summary judgment to Nusret.  They also appeal the denial of the joint motion to extend the pretrial and trial deadlines; the Employees' motion for extension of time to respond to Nusret's motion for summary judgment; and the Employees' motion for deferred consideration of the motion for summary judgment—all of which, they argue, should have been granted to give them time to conduct the deposition of Paperchase representative Nish Patel.

## II.    Discussion

### A.  The Service Charge

This Court reviews the grant or denial of summary judgment *de novo*, "applying the same legal standards used by the district court." *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019).  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550

---

[7] The district court also found that "the undisputed evidence supports [that] the service charge became part of the Steakhouse's gross receipts."

U.S. 372, 380 (2007) (quotation omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The parties do not dispute that if the service charge is properly considered part of the Employees' "regular rate of pay," Nusret satisfied its overtime and minimum wage obligations under the FLSA because the Employees were paid well above 1.5 times Florida's minimum wage per hour.[8]  But if the service charge counts as a tip, Nusret was not eligible to use those payments to satisfy its wage obligations under 29 U.S.C. § 207(i)'s overtime exemption[9] because tips cannot count toward the hourly "regular

---

[8] The restaurant attached the following table to its motion for summary judgment purporting to show the lead plaintiff's pay for a representative period, and the Employees do not dispute its accuracy.

| Check Date | Work | Days | Hours | Gross Pay | Hourly Rate |
|---|---|---|---|---|---|
| 06/01/2018 | 05/14/2018 | 05/27/2018 | 79.30 | $ 2,890.61 | $ 36.45 |
| 06/15/2018 | 05/28/2018 | 06/10/2018 | 68.63 | $ 2,373.02 | $ 34.58 |
| 06/29/2018 | 06/11/2018 | 06/24/2018 | 76.22 | $ 2,520.69 | $ 33.07 |
| 07/13/2018 | 06/25/2018 | 07/08/2018 | 52.58 | $ 1,798.91 | $ 34.21 |

[9] 29 U.S.C. § 207(i) provides, in full:

No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of

14              Opinion of the Court              20-12422

rate of pay."[10]  *See Walling*, 325 U.S. at 424 ("[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."); *see also* 29 U.S.C. § 207(e) (defining "regular rate" in part, as including "all *remuneration for employment* paid to, or on behalf of, the employee" (emphasis added)).[11]

---

such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Section 207(a) (referenced above in § 207(i)) provides for a forty-hour workweek and one and one-half times compensation for time worked over forty hours.  *Id.* § 207(a)(1).

[10] The "regular rate" of pay is calculated by dividing the total compensation an employee receives by the total number of hours worked.  29 C.F.R. § 778.118.  And to be clear, this case is not about whether tips are part of the regular rate of pay (they are not, and neither party claims otherwise), but rather whether Nusret's mandatory service charge is a tip.

[11] As quoted above, the regular rate of pay includes "remuneration for employment paid to . . . the employee" but it does not include, for example, "sums paid as gifts" or, in general, "[s]ums paid in recognition of services performed."  And DOL regulations explain that, outside of circumstances not applicable here (*i.e.*, where an employer claims a "tip credit" under 29 U.S.C. § 203(m)), tips "need not be included in the regular rate" because they "are not

20-12422                Opinion of the Court                15

For the reasons explained below, we hold Nusret's service charge was not a tip under the FLSA or other DOL regulations and was therefore part of the Employees' "regular rate of pay." Accordingly, the unrebutted record evidence shows that the restaurant satisfied its wage obligations under the FLSA.

The FLSA defines neither "tip" nor "service charge." But as noted in Department of Labor ("DOL") regulations, the critical feature of a "tip" is that "[w]hether a tip is to be given, and its amount, are matters *determined solely by the customer*." *See* 29 C.F.R. § 531.52(a) (emphasis added). Distinct from "a payment of a charge, if any made for the service," a tip is presented by a customer "as a gift or gratuity in recognition of some service performed for the customer." *Id.*

By this measure, Nusret's service charge is not a tip. Critically, whether and how much to pay are not "determined solely by the customer." Indeed, those decisions are not determined by the customer at all. As the lead plaintiff, Compere, conceded in her deposition, "[Employees] were told that the service charge was supposed to be mandatory as if it was an item that a person ordered it, it had to be on the check."

Moreover, our conclusion that Nusret's charge was not a tip is bolstered by another DOL regulation providing "examples of amounts not received as tips" and speaking directly to the type of

_____

payments made by the employer to the employee as remuneration for employment within the meaning of the Act." 29 C.F.R. § 531.60.

charge at issue.  *See* 29 C.F.R. § 531.55.  Section 531.55 (a) explains that:

> A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip . . . .

*Id.* § 531.55(a).  We simply cannot distinguish between Nusret's service charge and this example.  The only difference between the two—that Nusret's service charge is 18% of the final bill and the example is only 15%—is obviously immaterial.  Nusret's charge was therefore a service charge and not a tip.[12]

---

[12] Our reading of the FLSA and DOL regulations is in line with the Fourth Circuit's decision in *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027 (4th Cir. 2020), where our sister circuit held that a restaurant's automatic gratuity of 20% for parties of six or more was not a "tip" and could be used to offset the restaurant's minimum and overtime wage obligations.  *Id.* at 1038. The court considered and rejected the employees' argument that the charges were tips because the manager would sometimes remove them from the bill. Relying only on the definition of "tip" in 29 C.F.R. § 531.52—and not mentioning the other regulations discussed here or "gross receipts"—the court emphasized that "the material issue is not whether customers always paid a twenty-percent automatic gratuity.  The material issue is *who* determined whether and how much to pay." *Id.*

Our holding is also supported by an opinion letter from the DOL Wage and Hour Division on a similar question.  That letter opined that a chauffeur service's "imposed gratuity" of 15%, which the company transferred directly to the chauffeur, was not a "tip" even though "[t]his imposed gratuity would not be included in the company's gross receipts." *See* DOL Opinion Letter, 2005 WL 3308602 (Sept. 2, 2005). Agency interpretations in opinion letters are "'entitled to respect' . . . to the extent that those interpretations have the

The Employees disagree. Their argument rests mainly on the theory that a service charge is a tip unless an employer "include[s] the service charges in their gross receipts for tax purposes." Because, according to the Employees, Nusret has failed to show that it included the service charges in its federal tax returns, there is a genuine issue of material fact as to whether the service charge is a tip, thereby precluding summary judgment.

Contrary to the Employees' contention, Nusret's tax forms are irrelevant. To be sure, 29 C.F.R. § 531.55(b) provides another example of an "amount[] not received as [] tip[]," and reads: "[a]s stated above, service charges *and other similar sums which become part of the employer's gross receipts* are not tips for the purposes of the Act," *id.* (emphasis added). But this section merely provides "examples" of non-tips. It does not purport to define—for purposes of the FLSA—"tips." By contrast, § 531.52(a) does. *See* 29 C.F.R. § 531.52(a) ("A tip is . . . ."). And, as discussed above, that definition of "tip" does not encompass Nusret's service charge.

Moreover, the "service charges and other similar sums" example in subsection (b) cannot be fairly read to require that an employer include a service charge in its gross receipts for tax purposes to avoid treating it as a tip. First, (b) references the example of a service charge in subsection (a) through the "as stated above" language and thereby reiterates that service charges are not

---

'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994)).

tips for purposes of the FLSA. *See id.* § 531.55(b). Second, nothing in the text of subsection (b) affirmatively requires that the service charges be included in the employer's gross receipts to not be considered a tip; it simply gives examples of non-tips. [13] Third, the

---

[13] The Employees point to several district court decisions holding that the relevant sums must be recorded in the employer's gross receipts to be considered a service charge countable toward the employer's wage obligations. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 927–30 (S.D.N.Y. 2013); *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015); *Shaw v. Set Enters., Inc.*, 241 F. Supp. 3d 1318, 1328–29 (S.D. Fla. 2017). Of course, we are not bound by the decision of any district court. But, in any event, these cases are distinguishable because they involved clubs where customers paid fees, in cash, as well as tips, directly to dancers. In contrast, the service charges paid by Nusret's customers never went directly to employees, but went directly to Nusret through its POS system.

The Employees also cite one circuit court decision, *McFeeley v. Jackson Street Ent., LLC*, 825 F.3d 235 (4th Cir. 2016), in which the Fourth Circuit held that a performance fee paid by club patrons directly to dancers, which the dancers kept for themselves, was not a service charge for FLSA purposes. *Id.* at 245–46. The court stated that one prerequisite to use the "service charge" as an offset to an employer's overtime and minimum wage obligations is that "the service charge 'must have been included in the establishment's gross receipts.'" *Id.* (quoting *Hart*, 967 F. Supp. 2d at 929). *McFeeley* is not persuasive as it relates to this case because it is factually distinct—it's another case in which charges and tips were both paid in cash directly to the dancers. Moreover, we are far more persuaded by the later Fourth Circuit decision in *Wai Man Tom*, discussed above in footnote 12, which considered a scenario much closer to our case and held that a mandatory 20% gratuity was not a tip. *See Wai Man Tom*, 980 F.3d at 1038.

And even assuming that service charge payments must be included in an employer's gross receipts to constitute a bona fide service charge, the record

Employees have cited no binding authority for reading an "include in gross receipts *for tax purposes*" requirement into the FLSA or its accompanying regulations. Such a requirement is absent even from 29 C.F.R. § 531.52(b), which mentions gross receipts. Pointing to no binding authority, the Employees ask this Court to ignore the plain text of the regulations and read an additional recordkeeping requirement into the FLSA's already extensive and burdensome requirements. We decline to do so.[14]

The Employees also argue that Nusret's service charge was not, in fact, mandatory because managers had discretion to remove the charges on the bills of dissatisfied customers (much like a manager might "comp" an entrée). But what the Employees miss is that the relevant question is whether the decision to pay the given sum is "determined solely by the *customer*." *See* 29 C.F.R. § 531.52(a) (emphasis added). Here, it is not. The customers had

---

evidence on this issue demonstrates that Nusret satisfied this requirement. Black's Law Dictionary defines "Gross Receipts" as "[t]he total amount of money or other consideration received by a business taxpayer for goods sold or services performed in a taxable year, before deductions." *Gross Receipts*, Black's Law Dictionary (11th ed. 2019). Here, the undisputed record evidence shows that Nusret received the service charges and recorded them in its POS system before redistributing them to employees. Thus, the charges "bec[a]me part of [Nusret's] gross receipts." *See* 29 C.F.R. § 531.52(b).

[14] To be clear, we give no opinion on whether Nusret complied with federal tax law in its treatment of the service charge on its tax returns. Our holding is simply that Nusret's tax returns are irrelevant to determining whether the service charge is a tip.

no ability to determine on their own whether they would pay the service charge.  It is irrelevant that *managers* would sometimes remove the service charge for dissatisfied customers.

Accordingly, we agree with the district court that Nusret's mandatory 18% service charge was a bona fide service charge and not a tip because it was a "compulsory charge for service," and the decision to pay it—and the amount to pay—were not "determined solely by the customer."  *See* 29 C.F.R. §§ 531.52, 531.55.

### B.  Discovery and Rule 56(d) Motions

As discussed above, the Employees unsuccessfully sought extensions of the pretrial and trial deadlines and the deadline for responding to the motion for summary judgment, as well as deferred consideration of summary judgment to conduct the in-person deposition of Nish Patel of Paperchase, Nusret's outside accountant, which was delayed because of the pandemic.  The Employees expected Patel "to confirm that the service charges were not included in [Nusret's] gross receipts," which they asserted would have defeated Nusret's § 207(i) exemption.

Because we hold that, as a matter of law, Nusret's mandatory 18% service charge was not a "tip" no matter how it was treated on Nusret's tax returns, Patel's purported testimony

would have made no difference.[15]  We therefore do not reach the Employees' argument about the denial of these motions.

★    ★    ★

Accordingly, we affirm the district court's award of summary judgment to Nusret.

**AFFIRMED.**

---

[15] In its discovery requests, the Employees also sought the restaurant's monthly and annual financial statements, tax returns, and cash flow statements, along with other financial documents.  The Employees do not dispute that Paperchase produced these documents, nor do they dispute their authenticity.  And in any event, Nusret affirmatively "concede[d]" that it "did not report the service charges on its corporate tax returns nor pay sales tax on them" in its reply in support of summary judgment.