[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10181

Non-Argument Calendar

_____

CRISTY NELSON,

Plaintiff-Appellant,

*versus*

MLB HOTEL MANAGER, LLC,

MLB FAIRWINDS, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23730-RNS

_____

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Cristy Nelson worked as a server at La Sombra, a restaurant located within the Fairwinds Hotel in Miami Beach. She sued MLB Hotel Manager, LLC and MLB Fairwinds, LLC—her alleged employers—under the Fair Labor Standards Act (FLSA), claiming that she was underpaid. In the district court, Nelson didn't dispute that she "was paid an amount that exceeds the applicable minimum wage and minimum overtime compensation." Order at 3. But she argued that those wage and overtime requirements couldn't be satisfied, in part, "by amounts generated through a service charge." *Id.* The district court granted summary judgment for the defendants. Shortly thereafter, in a case with nearly identical facts, we held that a mandatory "service charge was not a tip and could lawfully be used to offset [the employer's] wage obligations under the FLSA." *Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1182 (11th Cir. 2022). We see no reason to reach a different result in this case. Accordingly, we affirm.

# I

## A

First, some legal background. The FLSA generally requires that an employer pay its employees at least $7.25 per hour. *See* 29 U.S.C. § 206(a). That figure, moreover, doesn't excuse noncompliance with state-minimum-wage requirements. *See id.* § 218(a). The parties agree that, at all times relevant to this dispute, the minimum wage in Florida was $8.46 per hour.

In addition, § 207(a) of the FLSA generally prohibits employers from having an employee work more than 40 hours in a week, "unless such employee receives compensation for [her] employment in excess of [40 hours] at a rate not less than one and one-half times the regular rate at which [she] is employed." An employee's "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

There are, however, exceptions to § 207(a)'s overtime requirement. As relevant here, an employee at "a retail or service establishment" needn't receive overtime if: "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to [her] under [29 U.S.C. § 206], and (2) more than half [her] compensation for a representative period (not less than one month) represents commissions on goods or services." *Id.* § 207(i).

**B**

Now, the facts. While working at La Sombra from January through June 2019, Nelson received compensation in the form of (1) a base wage, (2) a portion of the restaurant's service charges, and (3) additional, discretionary tips. Nelson didn't dispute that "she was compensated a total gross rate of approximately $21.67 per hour'—assuming that the 'service charge' is validly factored into [her] wages." Order at 2. But she sued the defendants for failure to comply with the FLSA, arguing that any wages tied to the service charge were, in reality, derived from an unlawful "tip pool" that was shared with her managers. *See* 29 U.S.C. § 203(t) (defining "tipped employee" as any employee "engaged in an occupation in which [she] customarily and regularly receives more than $30 a month in tips"); *id.* § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.").

After discovery, the defendants moved for summary judgment. As the district court explained, "[t]he parties d[id] not dispute that an item identified as a 20% 'service charge' appeared, at least after January 2019, on menus, checks, or both." Order at 2. Nor did Nelson dispute "that her paystubs included a separate line item for compensation originating from a 'service charge.'" *Id.* What she did take issue with was whether the service charge "was, for FLSA purposes, a bona fide commission that could be factored

into wages or, alternatively, whether it was part of [her] tips such that it could not be factored into [her] wages." *Id.*

As to that service charge, La Sombra's menus specified that the restaurant "imposes an automatic, non-discretionary service charge of 20% on every customer's bill." The district court found—and Nelson doesn't contest—"that the service charge was always chargeable to customers" during the relevant timeframe, "although it was not disclosed on menus when La Sombra first opened in January 2019 and on some occasions La Sombra managers allowed the charge to be waived in response to customer complaints." *Id.* Nelson argued that this managerial discretion meant that the service charge wasn't really mandatory; it was a tip that couldn't be used to satisfy her employer's wage obligations. She also complained that if the service charge was a tip, her managers couldn't share in the proceeds. Finally, Nelson insisted that the service charge had to be a tip because her employers didn't include the charge in their gross receipts for tax purposes.

The district court granted summary judgment for the defendants. It reasoned that "the key distinguishing features of a tip, as opposed to a service charge, are that a tip is voluntarily given (or not given), its amount is 'determined solely by the customer,' and the customer has the right to determine the recipient of the gratuity." *Id.* at 5 (quoting 29 C.F.R. § 531.52). According to the district court, the service charge at issue was not that, so Nelson's claims failed.

Nelson appealed.[1]

## II

Our recent decision in *Compere* dictates the outcome of this appeal. There, we held that a mandatory "service charge was not a tip under the FLSA or other DOL regulations." 28 F.4th at 1186. Like the district court, we explained that "the critical feature of a 'tip' is that '[w]hether a tip is to be given, and its amount, are matters *determined solely by the customer*." *Id.* (quoting 29 C.F.R. § 531.52(a)). And because "whether and how much to pay" for a *mandatory* service charge are matters "not 'determined solely by the customer,'" we concluded that such a "service charge is not a tip" and could be used "to meet [the employer's] wage obligations under the FLSA." *Id.* at 1182, 1186; *see also* 29 C.F.R. § 531.55(a) ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip . . . .").

That is precisely the case here. La Sombra imposed an "automatic, non-discretionary service charge of 20%" on its customers' bills. And Nelson fails to identify any record evidence suggesting that a customer could unilaterally decide not to pay the charge. Moreover, contrary to Nelson's suggestion, it is "irrelevant" whether the service charge was included on the defendants' tax

---

[1] "This Court reviews the grant or denial of summary judgment de novo, applying the same legal standards used by the district court." *Compere*, 28 F.4th at 1185 (quotation marks omitted).

forms.[2] *Compere*, 28 F.4th at 1187. And it is "immaterial" whether the defendants distributed some of the pooled service charges to non-tipped employees, because those restaurant-imposed charges weren't tips. *Id.* at 1182 n.4. Thus, they could be credited toward the defendants' minimum wage and overtime obligations.

Nelson's attempts to distinguish *Compere* are unavailing. First, she stresses that her restaurant would often waive the service charge if a customer complained. But in *Compere*, we said that was "irrelevant." 28 F.4th at 1188. Even if the restaurant had "discretion to remove the charges on the bills of dissatisfied customers," that didn't mean that the *customers* "had [the] ability to determine on their own whether they would pay the service charge." *Id.* And again, "the relevant question is whether the decision to pay the given sum is 'determined solely by the *customer*.'" *Id.* (quoting 29 C.F.R. § 531.52(a)).

Nelson's second argument fails for the same reason. She notes that the restaurant would remove the service charge for guests of the Webster Hotel as a matter of practice. But that was a discretionary policy of the *restaurant*. It was not a decision made by the *customer*. Accordingly, the wages distributed as a result of the service charge—in those cases where it was imposed—could be

---

[2] As in *Compere*, "we give no opinion on whether [the defendants] complied with federal tax law in [their] treatment of the service charge on [their] tax returns." 28 F.4th at 1188 n.14. It's just that those "tax returns are irrelevant to determining whether the service charge is a tip." *Id.*

used to satisfy the restaurant's wage obligations. *See id.* at 1188–89.

Finally, Nelson argues that the district court improperly invoked the "§ 207(i) exemption" which, she claims, is an "affirmative defense" that the defendants failed to preserve by not pleading it in their answer. Nelson misconstrues the district court's order. The district court explained that it "d[id] not reach the question[] of whether . . . the Defendants preserved an affirmative defense based on 29 U.S.C. § 207(i)."[3] Order at 9. It instead concluded that there was no need to consider the exception, because after factoring in the service charges, Nelson's gross wages were "undisputed and in excess of statutory minimums." *Id.*; *see also id.* at 3 ("There is no dispute in this case as to whether the Plaintiff was paid an amount that exceeds the applicable minimum wage and minimum overtime compensation."). Nelson fails to contest that point—which the district court found dispositive—in her opening brief. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th

---

[3] To be clear, we express no view on whether § 207(i) is an affirmative defense that must be pleaded in a defendant's answer. *Cf. Huff v. Dekalb County*, 516 F.3d 1273, 1278 n.5 (11th Cir. 2008) (explaining that "§ 207(k) is part of the general FLSA overtime rule itself" and holding that the defendants had "properly raised [a] § 207(k) argument at the summary judgment stage and were not required to do so in their answer"); *Walton v. United Consumers Club*, 786 F.2d 303, 307 (7th Cir. 1986) (concluding that § 207(i) "is not an affirmative defense," but rather, "a method of complying with the [FLSA]"). *But cf. Flores v. 2K Clevelander, LLC*, No. 1:16-CV-24083-UU, 2017 WL 5054565, at *4 (S.D. Fla. May 4, 2017) (holding that § 207(i) is an affirmative defense that generally can't be invoked unless it was raised in the defendant's answer).

Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [she] is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). And to the extent she makes such an argument in her reply, it "come[s] too late." *Id.* at 683; *see Greenberg v. Comm'r*, 10 F.4th 1136, 1167 (11th Cir. 2021) ("[T]his Court does not address arguments advanced by an appellant first raised in [her] reply brief.").

We therefore affirm the district court's grant of summary judgment.

## III

The merits behind us, there are two related matters to resolve. The defendants have moved for sanctions, arguing that Nelson filed this appeal in bad faith and without any reasonable basis in fact or in law. Nelson has also moved for sanctions, arguing that the defendants' motion for sanctions is *itself* frivolous and deserving of sanctions.

## A

We'll take the defendants' motion first. "An award of damages and costs under Federal Rule of Appellate Procedure 38 is appropriate when an appellant raises clearly frivolous claims in the face of established law and clear facts." *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1243 (11th Cir. 2021) (quotation marks omitted). "A claim is clearly frivolous if it is utterly devoid of merit." *Id.* (cleaned up). But that's not what we have here. At the time

Nelson filed this appeal, it presented "an issue of first impression in the Eleventh Circuit." *Compere*, 28 F.4th at 1181. "And appeals about issues of first impression are unlikely to be frivolous." *McLaurin*, 13 F.4th at 1243. That's particularly true in a case like this one, which turns on the construction of a rather complicated statute such as the FLSA. Although our intervening decision in *Compere* ultimately disagreed with Nelson's interpretation, she clearly "raise[d] at least a colorable argument." *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016). Thus, we cannot say that her appeal was utterly devoid of merit. Nor do we see anything to suggest that Nelson has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," such that sanctions might otherwise be appropriate. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quotation marks omitted).

**B**

As to Nelson's cross-motion, things are a little different. We "may" impose sanctions if a party "files a frivolous motion," including one for sanctions. 11th Cir. R. 27-4. And we think that this case presents a close call. Despite our affirmance, Nelson's appeal was far from frivolous. She presented a good-faith, though unsuccessful, argument as to why the 20% service charge was a tip—that La Sombra's managers would frequently remove the charge when guests complained. At least one district court appears to have accepted a similar argument as a reason for denying summary judgment. *See Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club*, 577 F. Supp. 2d 566, 573–74 (D.P.R. 2008). *But*

*see Compere*, 28 F.4th at 1188 (rejecting a nearly identical argument in a decision issued after the defendants moved for sanctions and briefing was complete).  And multiple district courts had accepted some form of Nelson's "gross receipts" argument as well.  *See, e.g.*, *Shaw v. Set Enters.*, 241 F. Supp. 3d 1318, 1329 (S.D. Fla. 2017) (citing *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 246 (4th Cir. 2016)); *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1323 (N.D. Ga. 2015); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 929 (S.D.N.Y. 2013).  *But see Compere*, 28 F.4th at 1187 (rejecting "gross receipts" argument).  Our caselaw—at least at the time—was silent.

We caution litigants to think twice before moving for sanctions in such circumstances.  Doing so wastes judicial resources.  It detracts from the salient issues.  And it often transforms a good-faith legal dispute into an ugly mudslinging battle.  To reiterate, an opposing party's good-faith disagreement as to the law is not a proper basis for sanctions.  "Reasonable lawyers often disagree, and this court's doors are open to consider those disagreements brought to us in good faith." *Duff v. Cent. Sleep Diagnostics, LLC*, 801 F.3d 833, 844 (7th Cir. 2015) (quotation marks omitted).  Members of the bar should recognize this.  At the same time, we stress that attorneys practicing before us should not be too quick to seek sanctions—particularly not under the assumption that it can't hurt to ask.  It certainly can.  *See* 11th Cir. R. 27-4.  And this case proves the point.  The defendants' motion, in our view, was itself frivolous.  For despite some precedent on Nelson's side—and nothing

from our court foreclosing her position at the time—the defendants insisted that Nelson's good-faith legal argument "defile[d] the temple of justice" and was so patently frivolous, "shameless[]," and "malicious[ly]" motivated that it was deserving of sanctions. The motion created an unwarranted sideshow that misdirected attention from the legal issues before us. And it wasted the resources of both parties and this Court.

With that said, we exercise our discretion to not grant Nelson her requested attorney's fees. The parties clearly have vastly different views of the law, and we're willing to give the defendants the benefit of the doubt as to their motivation for requesting sanctions. Even so, as a "modest" means of deterring gratuitous motions for sanctions in the future, we think it appropriate that "the defendant[s] shall bear [their] costs of defending the appeal even though [they] won." *Meeks v. Jewel Cos.*, 845 F.2d 1421, 1422 (7th Cir. 1988) (per curiam).

★  ★  ★

The district court's judgment is **AFFIRMED**, and the parties' respective motions for sanctions are **DENIED**, except insofar as the defendants-appellees are ordered to bear their own costs.