**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-6507**

───────────

DAVID A. RICHARDSON,

　　　　　Plaintiff – Appellant,

v.

HAROLD W. CLARKE, Virginia Department of Corrections; EDDIE L. PEARSON, Lead Warden-Greenville Correctional Center; TAMMY WILLIAMS, Warden, DRCC Correctional Center; VIRGINIA DEPARTMENT OF CORRECTIONS,

　　　　　Defendants – Appellees.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:18-cv-00023-HEH-EWH)

───────────

Argued: September 13, 2022　　　　　　　　　Decided: November 7, 2022

───────────

Before DIAZ, THACKER and QUATTLEBAUM, Circuit Judges.

───────────

Affirmed in part, vacated in part, and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Diaz and Judge Thacker join.

───────────

**ARGUED:** Oren Missim Nimni, RIGHTS BEHIND BARS, Washington, D.C., for Appellant. Kevin Michael Gallagher, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Samuel Weiss, Washington, D.C., Kelly Jo Popkin, RIGHTS BEHIND BARS, Brooklyn, New York, for Appellant. Mark R. Herring, Attorney General, K. Scott Miles, Deputy Attorney General, Laura

Maughan, Assistant Attorney General, Michelle S. Kallen, Acting Solicitor General, Brittany M. Jones, Deputy Solicitor General, Laura H. Cahill, Assistant Attorney General, Rohiniyurie Tashima, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

_____

QUATTLEBAUM, Circuit Judge:

David Richardson, a deaf and blind inmate, claims he was denied the same access and enjoyment available to inmates without disabilities in violation of the Americans with Disabilities Act ("ADA"). And he contends the prison's head covering policies substantially burdened his Islamic faith as prohibited by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). We agree with the district court's order granting summary judgment to the prison on Richardson's ADA claim. But we vacate the court's order rejecting the RLUIPA claim and remand for proceedings consistent with this opinion.

I.

Richardson is an inmate at the Deerfield Correctional Center of the Virginia Department of Corrections ("VDOC"). He alleges that he is legally deaf and blind. J.A. 209. He sued the VDOC and several prison officials claiming that the VDOC did not "provide equal enjoyment of the goods, services, facilities, advantages, privileges, and accommodations available to those without disabilities" in violation of Title II of the ADA.[1] J.A. 20; 23–33.

---

[1] For the same reasons, Richardson alleged the VDOC violated Section 504 of the Rehabilitation Act ("§ 504"). J.A. 23-33. The ADA and § 504 "differ only with respect to the third element, causation." *Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454, 461 (4th Cir. 2012). Section 504 requires that the plaintiff be denied benefits or discriminated against "solely by reason" of his disability. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). Because § 504 imposes "a stricter causation requirement than

3

Richardson also alleges that he adheres to the Nation of Islam faith. J.A. 14. He insists that his faith requires him to wear a head covering at all times. J.A. 22, 45. His suit also alleges that the VDOC's policy on head coverings substantially burdens his religious beliefs in violation of the RLUIPA. J.A. 22, 45.[2]

The district court granted the VDOC's motion for summary judgment on the ADA and RLUIPA claims.[3] J.A. 251. As to the ADA claims, it concluded that Richardson failed to produce evidence creating a genuine dispute of material fact that he was denied participation in any activity or program due to his alleged disabilities and that, even assuming he was, the VDOC reasonably accommodated Richardson's disabilities. J.A.

---

the ADA," where claims under both statutes are at issue, we analyze only the ADA claim because "[i]f that claims fails, the Rehabilitation Act claim must fail as well." *Id. (quoting Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 641 (4th Cir. 2016)).

[2] In his complaint, Richardson alleged violations of (1) the ADA, (2) § 504, (3) RLUIPA, (4) the Eighth and Fourteenth Amendments, (5) the First Amendment as to the free exercise of religion, (6) the First Amendment as to free speech, (7) the Fifth and Fourteenth Amendments as to access to courts and (8) various state laws. J.A. 23–60. He sued not only the VDOC but also its Director Harold Clarke and Wardens Eddie Pearson and Tammy Williams. But in response to the defendants' motion, the district court dismissed all claims except for the ADA and § 504 injunction claims against the VDOC, a state law disability claim against the VDOC and the RLUIPA and First Amendment free exercise claims against the VDOC and Williams (collectively, the VDOC) related to restricting his ability to wear a religious head covering. The district court reasoned that the doctrine of sovereign immunity barred the ADA damages claim and that, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the other claims it dismissed failed to state facts to plausibly support a cause of action.

[3] The district court also granted summary judgment as to Richardson's First Amendment free exercise claim.

242. As to Richardson's RLUIPA claim, the district court held that Richardson presented no evidence of a substantial burden on the exercise of his religious beliefs. J.A. 248–49.

Richardson appealed and we have jurisdiction under 28 U.S.C. § 1291.[4] As to the ADA and § 504 claims, Richardson argues that the district court failed to credit evidence set forth in his responses to the VDOC's motion for summary judgment. Op. Br. 32. According to Richardson, based on such evidence, "a reasonable trier of fact could find that Defendants denied Richardson the ability to participate in his court proceedings to the same extent non-disabled individuals are able to participate." Op. Br. 37. As to the RLUIPA claim, Richardson argues he showed the prison's head covering policy substantially burdened his religious beliefs. In fact, he insists the burden is obvious. Op. Br. 12.

We affirm the district court's dismissal of the ADA. As the district court noted, the VDOC not only reasonably accommodated Richardson's disabilities; it went to extraordinary lengths to do so. J.A. 242. Richardson fails to establish a genuine dispute of material fact on these issues. But as to the RLUIPA claim, the VDOC did not move for summary judgment on whether the VDOC's policy substantially burdened his religious beliefs. Without any indication that the district court gave Richardson notice of its protentional ruling on this issue and an opportunity to respond, we question whether Rule 56(f) of the Federal Rules of Civil Procedure permits dismissing the RLUIPA claim on

---

[4] The only issues Richardson appeals are the order dismissing his ADA damages claim based on sovereign immunity and the order granting summary judgment on the ADA, § 504 and the RLUIPA claims.

substantial burden. Regardless of Rule 56(f), however, the record establishes that the VDOC's policy substantially burdened Richardson's sincerely held religious beliefs. Therefore, we vacate the order granting summary judgment on the RLUIPA claim. And we remand the case to the district court for further proceedings on that claim. As part of those further proceedings, we instruct the district court to consider an issue the VDOC raised at oral argument but only cursorily in its briefing to us—whether the "safe harbor" provision of the RLUIPA precludes Richardson's claim for injunctive relief.

## II.

We begin with our standard of review. "We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). The VDOC, as the party seeking summary judgment, bore the initial burden of showing that there was no genuine dispute of material fact and that it was entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted).

6

Once the movant has made this threshold demonstration, the nonmoving party must show specific, material facts that give rise to a genuine dispute to survive the motion for summary judgment. *Celotex Corp.,* 477 U.S. at 323–24. Under this standard, "the mere existence of a scintilla of evidence" in favor of the nonmovant's position cannot withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037 (citing *Strickler v. Waters*, 989 F.2d 1375,1383 (4th Cir. 1993)).

### III.

Guided by this standard, we start with Richardson's ADA arguments on appeal. First, we will review the ADA's framework. Then, we turn to the evidence presented by the VDOC before analyzing whether the evidence offered by Richardson in response created a genuine dispute of material fact.

### A.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a violation of the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program or activity and (3) he was denied those benefits, or otherwise

7

discriminated against, based on his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

The ADA permits plaintiffs to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact and (3) failure to make reasonable accommodations. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 n. 5 (4th Cir. 2016) (citing *A Helping Hand, LLC v. Baltimore Cty., Md.*, 515 F.3d 356, 362 (4th Cir. 2008)). Richardson's ADA claim is based the third ground—that the VDOC failed to make reasonable accommodations.

"Not all public services, programs, or activities can be made meaningfully accessible to all citizens, or at least they cannot be made so without a prohibitive cost or unreasonable effort on the part of the public entity." *Lamone*, 813 F.3d at 507. Accordingly, "to prevail on [an] ADA claim, plaintiffs must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek." *Id.* "A modification is reasonable if it is 'reasonable on its face' or used 'ordinarily or in the run of cases' and will not cause 'undue hardship.'" *Id.* (quoting *Halpern,* 669 F.3d at 464).

## B.

In support of its motion for summary judgment on Richardson's ADA claims, the VDOC submitted multiple affidavits from the warden and operations manager at the Deerfield facility. Those affidavits detail the accommodations provided to Richardson for his disabilities.

Deerfield scheduled times for inmates with language challenges to meet in person with American Sign Language ("ASL") interpreters for about five hours each week. J.A.

190–91. As Richardson notes, the COVID-19 pandemic forced the correction facility to suspend its in-person ASL visits. J.A. 140, 152. But when that occurred, it arranged for video-based interpreter services to aid Richardson with his medical appointments. J.A. 140. When Richardson claimed that this accommodation would not work for him, the prison staff tried to communicate with him using a computer set in a blue/green screen contrast that Richardson had previously requested. J.A. 14;140–41.

In addition, Deerfield "purchased a [$1,600] magnifying device to assist Richardson [in viewing] documents posted in his housing area." J.A. 143. Deerfield created flash cards in the blue/green screen contrast that Richardson said he prefers to facilitate communication with prison staff. J.A. 141. His housing area has a regular phone, a Telecommunication Device for the Deaf machine, a video phone and a computer kiosk. J.A. 143. Richardson has a JPay device, which is like an iPad, that he uses to send and receive secured messages. J.A. 143–44. Deerfield provided a UbiDuo device with two connected tablets, one of which is used by staff and one of which can be used by an inmate, to enhance communication with inmates who are hard of hearing. J.A. 146. And Deerfield offered a SARA device that can read printed text out loud for someone who cannot read for themselves, either due to literacy issues or a disability. *Id.*

Deerfield provided additional accommodations for Richardson to review and compose legal materials. After Richardson "complained that he could not use the typewriters to compose his legal documents, he was permitted to use the law library computers for this purpose. This is an exception to the VDOC's policy, which generally does not permit inmates to use computers for this purpose." J.A. 145. In addition, the staff

9

adjusted the computer settings and the legal software program to a certain visual contrast to aid Richardson in reading.

Further, with its affidavits, the VDOC submitted several electronic messages sent by Richardson using his JPAY device that describe his activities at Deerfield and a video of Richardson using a computer and communicating with another inmate in his housing area without help from an ASL interpreter. In those messages, Richardson admits that he is able to (1) visit the law library, including times that other inmates could not; (2) read material on a tablet; (3) listen to music; (4) watch movies; (5) draft and read emails and (6) otherwise participate in normal prison life. J.A. 193–207.

### C.

In response to the VDOC's motion for summary judgment, Richardson submitted two documents. J.A. 152–70; 209–13.

In his first submission, Richardson does not address the substantive arguments made by the VDOC or the evidence the VDOC argues establishes that it provided reasonable accommodations. Instead, he argues that policies enacted by the VDOC in response to the COVID-19 pandemic were unreasonable. J.A. 152–54.

In his second submission, Richardson states that he was previously provided a prison caregiver who helped read legal filings to him, but that since August 2020, that service has not been allowed. J.A. 210. He also insists he needs more than five hours per week with ASL interpreters so that he can keep up in the current litigation. J.A. 210–11.

Besides these complaints, Richardson does not directly address any of the VDOC's filings other than to say that they are "fraught with inaccuracies." *Id.*

### D.

So did Richardson create a genuine issue of material fact as to his ADA claim? He did not.

Richardson argues that the district court ignored the evidence he submitted in his filings. But the district court did not ignore the evidence. It simply disagreed with Richardson's position that his filings created a genuine dispute of material fact. And for three reasons, we agree.

First, Richardson's conclusory assertion that the VDOC's affidavits are "fraught with inaccuracies" does not defeat a motion for summary judgment. To repeat, "conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

Second, Richardson's criticisms of the VDOC's suspension of in-person ASL visits at Deerfield during COVID, Deerfield's failure to provide him with more than five hours of such ASL interpreter services once the COVID restrictions ended and Deerfield's refusal to allow his caregiver to read legal documents to him fare no better. J.A. 209–211. The ADA only requires "a reasonable modification to the challenged public program that will allow [an inmate] the meaningful access they seek." *Lamone*, 813 F.3d at 507. Richardson offers no evidence to create a genuine issue of material fact on this issue of the reasonableness of the accommodations provided by Deerfield. He offered only criticisms and requests for more accommodations. That is not enough. And no reasonable factfinder

11

could determine that Richardson's desire for more accommodations meant that the extensive ones the VDOC provided at Deerfield were unreasonable.

Accentuating this point, context, as it often does, matters. Here, our context is a prison. We view the reasonableness of accommodations through the lens of operating a prison. *Torcasio v. Murray*, 57 F.3d 1340, 1355 (4th Cir. 1995); *see also Havens v. Colorado Dep't of Corrs.*, 897 F.3d 1250, 1269 (10th Cir. 2018) ("[M]eaningful access and the question of whether accommodations are reasonable must be assessed through the prism of the prison setting.") (citations omitted). And that vantage point requires some deference to those who run prisons. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 78 (2d Cir. 2016) ("[P]risons are unique environments where 'deference to the expert views' of prison administrators is the norm.") (quoting *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008)). The ADA just does not require prisons to "to employ any and all means to make services available to persons with disabilities." *Miller v. Hinton*, 288 Fed. App'x 901, 902 (4th Cir. 2008). In sum, Richardson has not offered evidence to create a genuine issue of material fact as to the reasonableness of the accommodations provided by the VDOC.

Third, Richardson's claims cannot be squared with the record here. His complaint spans 50 pages and totals 148 numbered paragraphs. It and his other filings show that the accommodations the VDOC did provide permitted Richardson to read, research and compose detailed legal filings. Likewise, the messages and video recordings the VDOC submitted illustrate Richardson's ability to use the equipment provided by the VDOC in a way that allows him to participate in normal prison life. "When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). We are, of course, required to consider the evidence in the light most favorable to Richardson. But even doing that, no reasonable factfinder could conclude on this record that the accommodations provided to Richardson did not afford him "meaningful access" to all programs at Deerfield. *Lamone*, 813 F.3d at 507.[5]

## IV.

We now turn to Richardson's RLUIPA claim.

### A.

The RLUIPA provides, in part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on the person - -
 (1) is in furtherance of a compelling government interest; and
 (2) is the least restrictive means of furthering that compelling government interest.

---

[5] Richardson also appeals the district court's order dismissing his claim for damages under the ADA at the motion to dismiss stage on sovereign immunity grounds because he failed to plead a companion constitutional claim along with his ADA claim. Op. Br. 19–20. We acknowledge that the district court failed to apply the framework set forth in *United States v. Georgia*, 546 U.S. 151 (2006), to determine whether the ADA validly abrogates state sovereign immunity in the prison context for conduct that does not independently violate the Constitution. But because we agree that Richardson's ADA claim for injunctive relief fails on the merits, his claim for damages fails as well. Thus, we find it unnecessary to address this issue. *See Constantine*, 411 F.3d at 482 (4th Cir. 2005) (finding that the court need not address Eleventh Amendment immunity before addressing other dispositive matters).

42 U.S.C. § 2000cc–1(a). A plaintiff seeking relief under the RLUIPA bears the initial burden of proving that the challenged policy "implicates his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360 (2015).

If a plaintiff meets this initial burden, RLUIPA claims proceed in two stages. "At the first stage, . . . the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019) (citing *Carter v. Fleming*, 879 F.3d 132, 139–40 (4th Cir. 2018)). In order to show that his religious beliefs have been substantially burdened, a plaintiff must show that a government entity has substantially pressured him to modify his behavior and violate his beliefs. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).

If the plaintiff can make that showing, the court proceeds to the second stage to determine whether the prison's policies are justified despite the imposed burden. Under the RLUIPA, the government has the burden to show that its policy satisfies strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc–1(a); *Holt*, 574 U.S. at 357–58.

B.

When this lawsuit was filed, the VDOC's procedures granted the warden at each prison facility discretion to determine the times, locations and circumstances in which personal clothing, including religious head coverings, could be worn. J.A. 135.

At Deerfield, based on the warden's decision, inmates could wear religious head coverings in the same manner as nonreligious head coverings. *Id.* Head coverings needed

14

to be removed in certain areas of the prison, such as the dining hall, visiting room and administrative buildings. *Id.*

After Richardson sued, the VDOC changed its head covering policy. J.A. 138. The new policy permits inmates to wear religious head coverings anywhere inside a VDOC facility as well as when participating in outside work assignments. J.A. 138. Inmates are now only required to remove head coverings for search purposes when requested by security personnel. J.A. 138.

Despite this policy change, Richardson seeks prospective relief to prevent the VDOC from returning to its prior policy. On appeal, Richardson argues that the district court erred in determining that he failed to show that the prior policy imposed a substantial burden. He argues that the substantial burden is obvious. Op. Br. 12. In his view, he alleged that his religion requires him to wear a head covering at all times, and facially, the policy prevented him from doing so. *Id.*

C.

The parties agree that Richardson has satisfied his burden of proving that the head covering policy implicates his sincerely held religious beliefs. J.A. 114. They disagree, however, about whether Richardson satisfied his burden of showing that the prior policy imposed a substantial burden. [6]

---

[6] In a prior case, the VDOC conceded that its headwear policy imposed a substantial burden. *Goins v. Fleming*, 2017 WL 4019446, at *4 (W.D. Va. Sep. 12, 2017). Likewise, the VDOC does not argue here that the prior policy does not impose a substantial burden. Resp. Br. 45–46. The VDOC merely asserts that Richardson failed to meet his burden of proof on the issue. *Id.*

15

To begin with, in moving for summary judgment, the VDOC did not argue that Richardson failed to establish a substantial burden on his religious beliefs. Instead, it argued that Richardson's RLUIPA claim was moot as a result of the policy change permitting inmates to wear religious head coverings in all areas of the prison. J.A. 115–17. And it asserted that even if Richardson's claim was not moot, the Prison Litigation Reform Act ("PLRA") prevented the district court from issuing an injunction.[7] J.A. 117.

The district court determined that, despite the policy change, Richardson's claim was not moot because the VDOC failed to prove that it would not return to its prior policy restricting the wearing of head coverings in certain areas.[8] J.A. 243. But even though the VDOC had not raised the issue, the district court then held that Richardson failed to show that the prior policy imposed a substantial burden. J.A. 245–249. And because it held that Richardson's RLUIPA claim failed at the first step, it did not conduct an analysis as to

---

[7] The PLRA provides, in relevant part:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1).

[8] The district court appeared to agree with the VDOC concerning the PLRA. In a footnote, the district court stated that even if the prior policy imposed a substantial burden, the PLRA "likely" prevented it from awarding injunctive relief. J.A. 243 n.8.

16

whether the policy represents the least restrictive means of furthering a compelling governmental interest.[9]

To begin with, we question the district court's decision to grant summary judgment to the VDOC on an issue it failed to raise. In the summary judgment context, Rule 56(f) describes how a court may rule on an issue not raised by the moving party. Under the rule, a district court, "after giving notice and a reasonable time to respond," is permitted to "grant [summary judgment] on grounds not raised by a party; or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f); *see also Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (holding that the district court erred in failing to give notice and an opportunity to respond before addressing the substantial burden prong when the parties did not address it in their summary judgment briefing).

We see nothing in the record indicating that Richardson was afforded notice and an opportunity to respond on the issue of substantial burden of his religious exercise before the district court ruled against him. This, along with the fact that the VDOC did not address whether its policy imposed a substantial burden on Richardson's sincerely held religious beliefs in its memorandum in support of summary judgment, may explain why Richardson

---

[9] Richardson challenges the district court's discussion about whether the policy is rationally related to a legitimate penological interest. In so doing, he argues the district court applied the wrong level of scrutiny. Op. Br. 17. But a review of the order shows that the district court's rational relation discussion pertained only to Richardson's First Amendment free exercise claim. Since Richardson did not appeal the district court's order on that claim, we need not address this issue.

did not do more to address that issue in his response to the VDOC's motion for summary judgment. *See Carter v. Fleming*, 879 F.3d 132, 140 (4th Cir. 2018) (finding that an inmate had "no notice that he needed to develop evidence" showing that a prison policy imposed a substantial burden where defendants failed to argue the issue on summary judgment).[10]

But regardless of notice, the record establishes that the prior VDOC policy imposed a substantial burden. Along with the allegations in Richardson's complaint, the affidavit of Tammy Williams, the Warden at Richardson's facility, stated that she "understand[s] that Inmate Richardson claims that it is [his] sincere religious belief that he wear his kufi, a religious head covering, in *all* areas of Deerfield." J.A. 130 (emphasis added). Put another way, the VDOC concedes that Richardson holds a sincerely held belief that his religion requires that he wear a head covering at all times and in all places.

Thus, the prior policy required Richardson to either violate his religious beliefs—by refraining from wearing a head covering at all times—or risk discipline at Deerfield for violating the policy. In other words, Deerfield's head covering policy placed Richardson between the proverbial rock and a hard place.[11] Doing so substantially burdens his religious beliefs under the RLUIPA. *Lovelace*, 472 F.3d at 187 (a substantial burden on religious

---

[10] Since Richardson did not argue on appeal that the district court's order failed to comply with Rule 56(f), he provides no explanation on this point.

[11] There is some dispute over the origins of this phrase. Some claim it arose in the twentieth century to reflect choices miners in the Southwestern United States faced. Others attribute the phrase to Homer's Odyssey. There, Odysseus had to choose to pass through either the dangerous whirlpool Charybdis or the cliff occupied by man-eating monster Scylla. Regardless of the phrase's origin, it reflects the predicament of choosing between the lesser of two evils that Richardson claims he faced here.

18

exercise is one in which "a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs . . ."); *see also Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015) (explaining that a prison policy imposes a substantial burden if it "places the person between a rock and a hard place"); *Couch v. Jabe*, 679 F.3d 197, 200–01 (2012) ("[R]emoving privileges in [an] effort to compel compliance, despite not physically forcing [an] inmate to cut his hair, qualifies as [a] substantial burden.") (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).[12]

We find that Richardson met his burden of showing that the prior policy imposed a substantial burden. Thus, we vacate that portion of the district court's order and remand for further proceedings.

## D.

At oral argument, the VDOC argued that the RLUIPA "safe harbor" provision precludes Richardson's claim for injunctive relief as a result of its policy change permitting inmates to wear religious head coverings in all areas of the prison facility. That provision provides:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the

---

[12] We agree with the district court that, although suspended, the prior policy is not moot because the VDOC "failed to meet their heavy burden of establishing that it is absolutely clear that the [prior head covering policy] will not be reinstated." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (citation omitted). And to the extent the district court held that the PLRA precludes forward-looking relief, our decision in *Porter v. Clarke*, 923 F.3d 348, 366 (4th Cir. 2019), holds otherwise.

substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

42 U.S.C. § 2000cc-3(e).

Importantly, this issue was not raised before the district court. Generally, parties may not raise new arguments on appeal that were not first presented to the district court below, absent exceptional circumstances. *See*, *e.g.*, *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014). Further, while this issue was mentioned in the VDOC's brief to us, its only treatment was in a footnote that simply cites the text of the statute with no substantive discussion about its application to the facts here. *See* Resp. Br. 49 n. 22. Accordingly, without expressing a view one way or the other, we find that the pertinence of the RLUIPA "safe harbor" provision is best left to be considered by the district court on remand.

V.

For all these reasons, we affirm the district court's grant of summary judgment in part, vacate in part and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART*
*AND REMANDED*